IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | 4:15CR3067 |
| v. | ) | |
| DANIEL J. LLOYD, | ) | MEMORANDUM AND ORDER |
| Defendant. | ) | |

Daniel J. Lloyd filed a timely Motion to Vacate under 28 U.S.C. § 2255. After initial review[1], I deny the motion and dismiss it with prejudice. He claims his trial lawyer was ineffective, but the record plainly shows otherwise.

## *Factual Background*

The following facts recited in the presentence report (filing no. 61 at CM/ECF p. 5 & ¶¶ 11-13), and for which there was no objection, describe the overwhelming evidence against Lloyd.

---

[1]Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

On January 21, 2015, a confidential informant working with the Lincoln, Nebraska police department introduced Investigator Hoffman (Investigator) to Bryn Huffman for the purpose of buying methamphetamine from her. Huffman had told the confidential informant that 'Dirty' gave her ¼ lb of methamphetamine and Huffman was to sell it for him.

Between January 21, 2015 and February 25, 2015, a total of 5 controlled buys were made from Bryn Huffman. Huffman indicated that her source of methamphetamine was her boyfriend 'Dirty,' who was positively identified as Daniel Lloyd through his Nebraska state identification photo.

On February 25, 2015, an investigator contacted Bryn Huffman to purchase 1/8 ounce of methamphetamine. Huffman told Investigator to meet her at Daniel Lloyd's apartment, 1227 G Street, #3, in Lincoln.

During this transaction, Bryn Huffman sat in the front passenger seat of Investigator's vehicle, with Lloyd standing right outside the vehicle. Bryn Huffman told Investigator to hand the money directly to Lloyd. Lloyd was also instructing Huffman to charge a higher price for the methamphetamine and Huffman had to consult with Lloyd when asked if the price would stay that high or if it was temporary. When Investigator asked Huffman if there would be a price break for ¼ ounce, Huffman looked at Lloyd who said ¼ ounce would be $465.

After that controlled purchase on February 25, investigators served search warrants on Daniel Lloyd's residence as well as Bryn Huffman's residence. During a search of Lloyd's apartment, investigators found six baggies containing methamphetamine with an approximate total weight of 90.8 grams. The largest bag,

containing a net weight of 82.54 grams, was found by the Nebraska State Patrol Crime Lab to contain more than 95% pure methamphetamine.[2]

### *Charge, Sentencing and Appeal*

The charge was that Lloyd knowingly and intentionally combined, conspired, confederated and agreed with other persons to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code Section 841(a)(1), all in violation of Title 21, United States Code Section 846. He therefore faced a minimum of 10 years and a maximum of life in prison.

Lloyd sensibly agreed to plead guilty. At the Rule 11 hearing, Lloyd confessed under oath to essentially all of the facts described above. (Filing no. 32 at CM/ECF pp. 16-19.[3]) He specifically admitted that more than 50 grams of actual methamphetamine was involved. *Id.* at CM/ECF p. 18.

Lloyd's counsel objected to the presentence investigation report and moved for a variance. The objection related to whether Lloyd was a career offender and whether he should receive a role enhancement. The government conceded the objections. (Filing no. 63.) I decided not to vary upward or downward after sustaining the defense objection.

---

[2] Investigators also located a revolver hidden above the ceiling tiles in the bathroom at Lloyd's apartment. Lloyd was a convicted felon, however the government believed, and so informed the probation officer, that there was insufficient evidence to add a 924(c) charge. However, Lloyd did receive a two level enhancement for possession of a weapon pursuant to U.S.S.G. § 2D1.1(b)(1).

[3] Lloyd admitted that he ultimately received the money, but quibbled with the assertion that the officer handed him the money.

Lloyd received a reduction of three points for acceptance of responsibility (filing no. 61 at CM/ECF p. 8 & ¶¶ 38-39). With a criminal history category of VI and a total offense level of 29 (filing no. 63), I sentenced Lloyd to 188 months in prison which was within but at the top of the recalculated Guideline range.

The sentence was based upon a pure methamphetamine calculation arrived at by the Nebraska State Patrol Crime Lab. The presentence report provided a detailed description of the lab report and the procedures employed by the lab that formed the foundation for the conclusion that the methamphetamine that drove the Guidelines was greater than 95% pure. (Filing no. 61 at CM/ECF p. 6 & ¶¶ 24-26.[4]) There was no objection.

Lloyd appealed and his trial lawyer argued on appeal that my sentence was substantively unreasonable. The Court of Appeals disagreed and affirmed. (Filing no. 77.)

### *Law on Ineffective Assistance of Counsel*

Lloyd argues that defense counsel (a very experienced and zealous assistant federal public defender) was ineffective. Therefore, the *Strickland* standard must be applied. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984) (announcing principles for evaluation of claims of ineffective assistance of counsel under the Sixth Amendment). In order to prevail on a claim that defense counsel rendered ineffective assistance of counsel under *Strickland*, the claimant must establish two things. He or

---

[4] To account for possible confounding factors, the Nebraska State Patrol Crime Lab uses a very conservative method. It reduces the total weight by using the following calculation: total drug weight multiplied by purity level multiplied by .90. *Id*. Thus, of the total weight subjected to the testing procedure (82.54 grams), the defendant was held responsible for 70.57 grams of methamphetamine (actual) setting the base offense level at 30. (Filing no. 61 at CM/ECF p. 7 & ¶ 32.) That offense level covers actual drug weights of between 50 grams and less than 150 grams.

she must establish (1) that "'counsel's representation fell below an objective standard of reasonableness,'"[5] and (2) that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[6] *Nguyen v. United States*, 114 F.3d 699, 703-04 (8th Cir. 1997) (quoting *Strickland*, 466 U.S. at 688, 694.)

An evidentiary hearing is unnecessary if the claimant makes an insufficient preliminary showing on either or both prongs or the record clearly contradicts the claimant's showing on either or both prongs. *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995) (affirming denial of § 2255 motion without a hearing in the face of an ineffective assistance of counsel claim; stating that no evidentiary hearing is required where "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.").

---

[5] A judge's "scrutiny of counsel's performance must be highly deferential" and the judge must "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Reed v. United States*, 106 F.3d 231, 236 (8th Cir. 1997). In other words, a judge should make "every effort" to "eliminate the distorting effects of hindsight" by examining the lawyer's performance from "counsel's perspective at the time" of the alleged error. *Strickland*, 466 U.S. at 689.

[6] A "reasonable probability" is less than "more likely than not," *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (citing *Nix v. Whiteside*, 475 U.S. 157, 175 (1986) ("[A] defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice under *Strickland"*). But, it must be compelling enough to "undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

5

### *Discussion of Claims*

Lloyd makes four claims of ineffective assistance of counsel. Those claims border on the ridiculous.

First, he claims his lawyer was ineffective because the government did not move for the third point regarding acceptance of responsibility and it therefore breached the plea agreement. As recounted above, that is simply untrue. He got that third point.

Second, he argues that his lawyer erred because his lawyer failed to file a motion to suppress the search pursuant to a warrant because some of the statements contained in the search warrant affidavit were untrue. He does not specify what facts were untrue. Given the high burden of blowing up a search warrant under *Franks v. Delaware,* and given the undisputed facts recited above, it is clear that moving to suppress the search would have been fruitless.

Third, he argues that counsel was ineffective for failing to challenge the purity calculations. He does not explain upon what basis such a challenge would have been warranted. Given the undisputed facts recited above, it is clear that such a challenge would have been a complete waste of time.

Fourth, he argues that I enhanced his sentence on facts not proven beyond a reasonable doubt by a jury and counsel was ineffective for failing to challenge my doing so. This is nonsense. He admitted under oath all the facts necessary to trigger the statutory mandatory minimum. His reference to the *Alleyne* decision is irrelevant. No facts were used by me to increase the *statutory* minimum and therefore *Alleyne* has no bearing.

## *No Certificate of Appealability*

Finally, a defendant cannot appeal an adverse ruling on a § 2255 motion unless he or she is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set for in *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). I have applied the appropriate standard and determined that the defendant is not entitled to a certificate of appealability.

IT IS ORDERED that:

1. The Motion to Vacate under 28 U.S.C. § 2255 (filing no. 80) is denied and dismissed with prejudice.

2. A separate judgment will be entered.

3. No certificate of ability has been or will be issued.

DATED this 2nd day of April, 2018.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge